```
                    IN THE UNITED STATES DISTRICT COURT

                          FOR THE DISTRICT OF OREGON

JAMES THOMAS,                      )    Civil No. 05-3067-CO
                                   )
            Plaintiff,             )    OPINION AND ORDER
                                   )
     v.                            )
                                   )
CITY OF TALENT, et al.,            )
                                   )
            Defendants.            )
_____)
```

**PANNER, Judge.**

    Plaintiff James Thomas brings this 42 U.S.C. § 1983 action against the City of Talent, police officer Jeff Price, and Police Chief Robert Rector. The claims arise from a series of five citations issued to Plaintiff for allegedly violating a local ordinance later declared unconstitutional.

    On February 10, 2006, Magistrate Judge Cooney filed his Findings and Recommendation, which recommended granting Defendants' motion for summary judgment. Plaintiff timely filed objections. This matter is now before me for de novo review. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

    Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

1 - OPINION AND ORDER

is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)  The evidence, and any reasonable inferences that may be drawn from it, must be viewed in the light most favorable to the non-moving party.  Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1257 (9th Cir. 2001).

The Magistrate Judge assumed that all facts stated by counsel for the moving party were true, and ignored all evidence offered by Plaintiff unless those facts were conceded by Defendants.  In so doing, the Magistrate Judge relied on Local Rule 56.1(e).  However, a local rule cannot override the standards established by Federal Rule of Civil Procedure 56. "Federal Rule of Civil Procedure 83 invites the district courts to formulate local rules, but only insofar as they are not inconsistent with the federal rules themselves."  Henry v. Gill Industries, Inc., 983 F.2d 943, 949 (9th Cir. 1993).[1]

I have therefore reviewed the record *de novo* under the Rule 56 standard.

During the Summer of 2003, Plaintiff was living out of his van, which contained some cooking facilities and bedding.

---

[1] To assist in evaluating motions for summary judgment, this district requires a party moving for summary judgment to list what it contends are the undisputed material facts, and cite the location in the record where the court can find the evidence supporting each assertion.  L.R. 56.1(a), (c).  The opposing party must file a response stating whether it accepts or disputes these facts, and also cite to the record.  L.R. 56.1(b).

Plaintiff neglected to include citations in his response to Defendant's statement of concise facts, but he did cite to the record in his brief.  In addition, the record is just a few dozen pages and an audio recording, which the court can easily review. Alternatively, the court could order Plaintiff's counsel to file a corrected document, and pay closer attention to the local rules in the future.  Refusing to consider a party's evidence entirely should be a last resort.

2 - OPINION AND ORDER

Plaintiff sometimes ate in the van, but also frequented fast food restaurants.  At night, he usually parked the van on private land owned by friends, but sometimes stayed in RV parks or drove to the mountains or the coast.

During the daytime, he often frequented Lynn Newbry Park (the "Park"), a municipal park within the City of Talent.  He would drive to the Park and remain there for hours at a time, seated in the front seat of his vehicle.  Plaintiff says he has arthritis in his spine, which limits his ability to walk.  Plaintiff would periodically leave, driving to the store, a restaurant, the Post Office, and other locations.

Plaintiff usually parked in a particular space at the Park, which he preferred because it was shaded from the hot sun.  There is no evidence that Plaintiff ever spent the night in the Park, or that he or his vehicle were in the Park after it closed for the day.  There is no evidence Plaintiff engaged in any improper conduct while in the Park,[2] or that he ever slept in the Park.

Plaintiff's presence in the Park attracted the attention of the Talent police department.  Defendant Rector had recently been appointed Chief of the department. At Plaintiff's trial, Rector testified that senior city officials, including the City Manager and several city council members, were pressing him to do something about what they characterized as an ongoing problem of "behaviors that were concerning and alarming to citizens, about men being in the park for, apparently, what is homosexual acts."

---

[2] Defendants improperly tendered evidence of an incident that occurred long after the events in this case, and thus could not have influenced their actions during the Summer of 2003.

3 - OPINION AND ORDER

"That was a specific basis on which I was directed to step up patrol activities in the park and enforcement activities."

During these stepped up patrols, Rector and other officers repeatedly observed Plaintiff's van in the park, with Plaintiff in the front seat. Rector never saw Plaintiff exit the vehicle, or anyone accompanying Plaintiff.

Officer Price had observed Plaintiff's van in the Park ever since Price started working for the Talent police department in late 2002. Typically, the van was there when Price began his shift at 7:00 a.m. Sometimes, it was there when his shift ended. The vehicle was not always in the Park, and Plaintiff sometimes left. Officer Caballero confirmed that Plaintiff was often at the Park during the day, but would leave the Park for a time.

Chief Rector was uncomfortable with Plaintiff being in the Park so often. He also felt Plaintiff was not using the park in the same manner as other patrons, who typically hike or jog for a short time and then depart. Chief Rector researched the local ordinances, and found one that prohibited camping in the Park. Violations of that ordinance "shall, upon conviction, be punished by a fine of not more than $250.00 per incident." Talent Ordinance # 686, § 8 (Sept. 6, 2000).

On August 6, 2003, Chief Rector confronted Plaintiff and accused him of violating the ordinance by "camping" in the park. Plaintiff denied this. Chief Rector explained that, in his view, if Plaintiff was living out of his vehicle and was present in the park for hours at a time, he was "camping." Plaintiff disagreed. Rector warned Plaintiff he would be cited for violating the ordinance if he continued to frequent the park in this fashion.

4 - OPINION AND ORDER

The following day, Plaintiff was again parked in the lot. Chief Rector instructed a Talent Police officer, Hector Caballero, to issue a citation to Plaintiff. On August 15, 2003, Rector again observed Plaintiff sitting in his van in the parking lot, and cited Plaintiff for violating the ordinance against "camping." Plaintiff told Rector he intended to contest the citation. On August 18 and September 3, 2003, defendant Price cited Plaintiff for violating the "camping" ordinance. On September 10, 2003, Rector observed Plaintiff's van in the Park and warned Plaintiff to leave. Plaintiff was still there when Rector returned, and was issued another citation. All five citations were issued during daylight hours.

Talent Ordinance # 686 included the following prohibition:

**Camping**:  Unless specifically authorized, no person shall camp or dwell within the Greenway,[3] or under any bridge or viaduct within the Greenway area.

**Camp**:  means to set up, occupy, or to remain in or at a campsite.

**Campsite**:  means any place where any bedding, sleeping bag or other material used for bedding purposes, or any stove or fire, is placed, established or maintained for the purpose of maintaining a temporary place to live, whether or not such place incorporates the use of any tent, box, lean-to, shack or any other structure, or any vehicle or part thereof.

**Dwell**:  means to regularly or intermittently remain for such a period of time at or near a particular location, premises or area so as to create a circumstance normally or reasonably associated with inhabiting, living, or assuming a possessory

---

[3]  The Park is part of the "Bear Creek Greenway."

5 - OPINION AND ORDER

           interest in such area.

At Plaintiff's trial, Talent police officers had a difficult time explaining what conduct violates the ordinance, and what conduct is permitted. Chief Rector eventually explained that if a person is not paying rent, and has what "appears to be a transient lifestyle," then spending a lot of time in the park is illegal. However, a person who engages in the same conduct, but also rents a dwelling unit, is not violating the ordinance.

A municipal judge found Plaintiff guilty on all citations. Plaintiff appealed. On August 20, 2004, Jackson County Circuit Judge Daniel Harris declared the ordinance invalid on two grounds. First, ORS 203.079 mandates that a local ordinance of this sort include a provision requiring that written notice be given or posted 24 hours before a person is ordered to leave. Talent ordinance # 686 lacked this provision. Second, Judge Harris concluded the ordinance was unconstitutionally vague.

> The language used in the City of Talent ordinance to define the term "dwell" appears on its face to fail the first test for vagueness because it is difficult from a reasonable reading of the ordinance, for a person to determine whether certain conduct is considered dwelling or not. Said ordinance language further appears to fail the second test because it seems to have created an arbitrary enforcement standard among the police. At trial, each of the police officers who testified for the City of Talent had a different interpretation of the ordinance.

General Judgment in <u>City of Talent v. James Thomas</u>, Circuit Court No. 03-3936Z3 (August 20, 2004). Therefore, Plaintiff was acquitted. He subsequently brought this action. The Complaint mentions only non-economic damages, though Plaintiff's

6 - OPINION AND ORDER

declaration opposing summary judgment says Plaintiff spent an unspecified sum for legal fees to defend against the citations.

Plaintiff is the only person ever cited for violating Talent Ordinance # 686 by "camping" or "dwelling" in the Park. An unknown number of persons, including at least one in a tent, were directed to leave the Park. They each complied with that directive and were not cited.

## Discussion

### Statute of Limitations

This action was commenced on August 17, 2005. Defendant contends all claims arising from the citations issued on August 7 and August 15, 2003, are barred by the applicable statute of limitations, which is two years.

Plaintiff's claims were not ripe--and he could not bring an action--until he was acquitted. See Harvey v. Waldron, 210 F.3d 1008, 1013-15 (9th Cir. 2000); Sangathe v. Jagger, 165 Or. App. 375, 379 (2000). The limitations period did not commence to run until August 20, 2004. His claims therefore are timely.

### Claims Against Defendants Rector and Price

For purposes of this motion, I assume--without deciding--that (1) ordering Plaintiff to leave and then citing him for being in the Park, (2) even though his conduct did not violate a valid law, (3) would violate either a "fundamental right of free movement," see Nunez v. City of San Diego, 114 F.3d 935, 944 (9th Cir. 1997), or a non-fundamental right to intrastate travel, Johnson v. City of Cincinnati, 119 F. Supp.2d 735, 744 (S.D. Ohio

7 - OPINION AND ORDER

2000),[4] or some other constitutional right.

Nevertheless, Chief Rector and Officer Price can be held liable in damages only if, in light of the facts known to the officers and clearly established law, no reasonable officer could have believed these actions were lawful. See Saucier v. Katz, 533 U.S. 194, 202 (2001) ("dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

Where a police officer has probable cause to arrest someone under a statute, the officer is immune from liability even though the statute is later held unconstitutional, unless the statute "is patently violative of fundamental constitutional principles." Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994).

A reasonable officer could have believed that Plaintiff was violating Talent Ordinance # 686, even though Plaintiff was not "camping," as that term is commonly understood. The ordinance is drafted so broadly that a "campsite" would include even a "snowbird" residing in a motorhome who drives into the parking lot for a few minutes. Although Ordinance # 686 was later ruled invalid, the defects were not so patent that the invalidity should have been readily apparent to any reasonable officer.[5] Therefore, the invalidity of Ordinance # 686 does not negate the

---

[4] The Findings & Recommendation construes this as a Free Speech claim. It is not, albeit Plaintiff's briefing was of little assistance to the court in evaluating his claims.

[5] One defect in the ordinance was not constitutional, but rather a failure to include in the ordinance a notice provision required by Oregon law. Plaintiff did receive advance notice before being cited, and an opportunity to comply and avoid being cited, so he was not harmed by this technical violation.

defense of qualified immunity.  Id.

Plaintiff also contends the "citations were issued for the purpose of keeping Plaintiff from the park, and not for the purpose of stopping Plaintiff from camping."  "Defendants wanted to remove Plaintiff from the park because he was a homosexual." Complaint, ¶¶ 13 and 14.

No reasonable officer could believe it is permissible to exclude Plaintiff from the park, or issue him a citation, solely because Plaintiff is homosexual.  However, the officer's subjective motive for issuing the citation is ordinarily not relevant to the qualified immunity inquiry, so long as a reasonable officer would have been justified in issuing the citation.  See Crawford-El v. Britton, 523 U.S. 574, 588 (1998). Likewise, the subjective motivation of a police officer is irrelevant when analyzing a Fourth Amendment claim for wrongful seizure of a person.  Whren v. United States, 517 U.S. 806, 812-13 (1996) (need only be an objectively reasonable basis that could have justified his actions).

The Equal Protection Clause of the Fourteenth Amendment does prohibit government officials from enforcing generally applicable laws against homosexuals, while refusing to enforce the same laws against heterosexuals.[6]  See Stemler v. City of Florence, 126 F.3d 856, 873-74 (6th Cir. 1997) ("We emphatically reject . . . the proposition that the state may constitutionally discriminate by enforcing laws only against homosexuals").

However, I have seen no evidence that is what transpired

---

[6] Such an arbitrary policy could not survive rational basis review, hence I need not decide if a stricter standard applies.

9 - OPINION AND ORDER

here.  Certainly there is no direct evidence that Rector and Price were even aware of Plaintiff's sexual orientation, much less that it was the reason they issued the citations.

Chief Rector did testify that the police presence in the Park was heightened after city officials pressed him to do something "about men being in the park for, apparently, what is homosexual acts."  It does not follow, however, that all police activities in the Park were undertaken solely for that purpose.  If Chief Rector had observed an armed robbery in the Park, and arrested the suspect, the arrest would not be subject to challenge simply because the Chief originally went to the Park for the purpose of preventing homosexual activity.

Defendants have offered a plausible explanation of their reasons for citing Plaintiff.  It is understandable they might be concerned about his nearly constant presence in the Park, which he was using as his daytime home.  In a declaration opposing summary judgment, Plaintiff now asserts:

> In the past several years, prior to 2003, I was approached in Lynn Newbry Park, in Talent, Oregon, and asked for my identification by Talent City Police Officers almost every day I was in the park.  This happened perhaps 100 times.  I never noticed officers asking anyone else in the park for identification.
>
> On these occasions the Talent police officer who was talking to me in the park would say comments such as: "Are you going in the bushes? or "What were you going down the trail?" or "We have had a report of sexual activity going on down here." They would ask me questions about being down the trail, even though I had just been sitting in the park.  The path leading to the sitting area and to the trail comes out at the same place, so one

10 - OPINION AND ORDER

>           looking at the path does not know whether a person
>           has been in the sitting area, or on the trail.
>           The officers never asked these questions to other
>           people in the park.

These allegations are not in the Complaint. Plaintiff now alleges that Talent police officers stopped him at least 100 times, yet does not identify any officer involved, a curious omission with such a small police department. Plaintiff does not allege that Defendants Rector and Price harassed him in the past. This harassment allegedly occurred before 2003. Office Price started with the Talent police force in December 2002, and Chief Rector was named to his post on July 21, 2003. The policy of increased police presence in the Park commenced around July 2003.

Plaintiff also has not presented evidence of a pattern of citing homosexuals, while declining to cite heterosexuals.

A reasonable juror could not conclude, on this record, that Defendants cited Plaintiff because he is homosexual. Plaintiff's subjective belief that a discriminatory animus motivated the citations is insufficient. "[I]n the absence of some tangible evidence . . . that tends to support his conclusion, we are compelled by precedent to grant summary judgment to the defendants." Bingham v. City of Manhattan Beach, 341 F.3d 939 (9th Cir. 2003) (Reinhardt, J., concurring).

**Claims Against the City of Talent**

A municipal government, such as the City of Talent, is not liable in damages for violations of 42 U.S.C. § 1983 unless the injury results from a policy or custom established by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. Monell v. New York City Dep't of Soc.

11 - OPINION AND ORDER

Services of City of New York, 436 U.S. 658, 694 (1978).

Plaintiff was cited five times, and ordered to leave the Park, for allegedly violating a City ordinance later determined to be unconstitutional. An ordinance duly enacted by the city council constitutes official policy of the city. Id. at 690. When a claim is premised upon an unconstitutional city ordinance, the plaintiff is not required to prove deliberate indifference by the City Council. See Kuha v. City of Minnetonka, 365 F.3d 590, 604-05 (8th Cir. 2004); Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404-06 (1997). Nor may a city rely on the defense of qualified immunity. Owen v. City of Independence, Missouri, 445 U.S. 622, 650-57 (1980).

That the City is responsible for any constitutional deprivation that resulted from enactment of Ordinance # 686 is not enough, in itself, to subject the City to liability. Plaintiff must also show he was deprived of a right protected by § 1983, and sustained a compensable injury as a result.

Some decisions hold a municipality automatically liable in damages if its employees enforce an ordinance or policy later determined to be unconstitutional. See Fields v. City of Omaha, 810 F.2d 830 (8th Cir. 1987); Cooper v. Dillon, 403 F.3d 1208, 1221-22 (11th Cir. 2005); Faustin v. City and County of Denver, 268 F.3d 942, 947-48 (10th Cir. 2001); Davis v. City of Camden, 657 F. Supp. 396, 402 (D. N.J. 1987).

Richardson v. City of South Euclid, 904 F.2d 1050 (6th Cir. 1990), reached the opposite result. The Richardsons were charged with violating a city ordinance, which a court then invalidated as vague and overbroad. The Sixth Circuit held that the

12 - OPINION AND ORDER

Richardsons could not recover damages from the City because they had not been deprived of a constitutional right. On the contrary, they had received all the process that they were due:

> The Richardsons were not convicted without notice and trial. They were . . . permitted an opportunity to respond in open court, and vindicated by the dismissal of all charges after the municipal court found the ordinance unconstitutional.

Id. at 1053. Reyes v. City of Lynchburg, 300 F.3d 449, 455-57 (4th Cir. 2002), reached the same result.

In the absence of controlling Ninth Circuit authority--and neither party has cited any--I find Richardson and Reyes persuasive. Ordinance # 686 was held to be impermissibly vague. Enforcement of that law would deny procedural due process. However, Plaintiff received procedural due process. He was given notice of the charges, and an opportunity to be heard and to challenge the validity of the ordinance. When a municipal judge ruled against him, Plaintiff appealed that decision to a Circuit Court judge, who eventually ruled in Plaintiff's favor. The charges against him were then dismissed. Ultimately, no sanction was imposed against him for allegedly violating Ordinance # 686.

The Constitution does not require a local government body to reimburse a defendant for his legal expenses, or his emotional distress, merely because that person ultimately is acquitted of the charges.[7] A governmental body may voluntarily assume such

---

[7] I do not decide whether the result would differ if the City enacted or enforced an ordinance so blatantly unconstitutional that no reasonable city official could believe it was permissible. Those are not the facts here.

13 - OPINION AND ORDER

liability, but is not compelled to do so. The alternative would convert local governments into virtual ATM machines, strictly liable in damages every time a municipal ordinance is determined to be a little too vague or overbroad.

Plaintiff also contends the City is liable for a policy of unconstitutionally discriminating against homosexuals in the Park. I have seen no evidence such a policy existed, or that it was the reason Plaintiff was cited for violating Ordinance # 686.[8] Consequently, the City is entitled to summary judgment.

## Conclusion

For the reasons stated, I do not adopt the Findings and Recommendation (docket # 29), but the end result is the same. Defendants' Motion (# 4) for Summary Judgment is granted. This action is dismissed with prejudice.

IT IS SO ORDERED.

DATED this 7th day of August, 2006.

/s/  Owen M. Panner
_____
            Owen M. Panner
            United States District Judge

---

[8] Accordingly, it is not necessary to examine what Plaintiff (for the first time in his objections to the Findings and Recommendation) argues is a "right to privacy" under the United States Constitution. Plaintiff's last minute arguments regarding the Oregon Constitution do not require discussion either, as § 1983 provides a remedy only for deprivation of rights secured by the federal constitution and laws.

14 - OPINION AND ORDER